**SCHOOLER et al. v. SCHOOLER et al.**
No. 9641.

United States Court of Appeals
District of Columbia Circuit.
Argued June 7, 1948.
Decided Nov. 22, 1948.
On Petition for Rehearing, Feb. 14, 1949.

STEPHENS, Chief Judge, dissenting on rehearing.

Mr. Leo A. Rover, of Washington, D. C., with whom Mr. Harry Friedman, of Washington, D. C., was on the brief, for appellants.

Messrs. David Wiener and Samuel R. Blanken, both of Washington, D. C., for appellees.

Before STEPHENS, Chief Judge, and EDGERTON and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

At the trial of this action in the District Court, the defendants (appellees) moved for judgment at the close of the plaintiffs' case in chief. The motion was granted and judgment entered. Plaintiffs appeal.

The evidence tended to prove the following facts:

Louis Schooler had six children by three marriages. Wilfred Schooler, Yetta B. Lesser, Mary S. Reiskin and Ida Sherman, plaintiffs (appellants), are children of his first and second marriages. Jack and Robert Schooler are children of his third marriage to Sophie Schooler. These three persons were defendants. For brevity all parties will be referred to by their first names. Louis and Sophie owned several parcels of income-producing real estate in the District of Columbia as tenants by the entirety. On October 9, 1941, while at a hospital awaiting an operation, Louis made a will leaving all his estate to Sophie. He further stated it to be his "will and wish" that during the lifetime of Sophie one-fourth of the net income from the rented property should be paid to Wilfred; that he should control the bookkeeping and accounting and be consulted as to repairs; that Jack should receive $25 a week and act as manager in the "collections and maintenance" of the property, and that upon the death of Sophie all the property should be divided equally among the six children. Wilfred was named executor. Pursuant to an understanding when the will was made an instrument denoted "agreement" was executed by Louis and Sophie. It bore the same date as the will, although drawn and signed some days later. This writing stated that in consideration of the execution of the will Sophie agreed that "the will and wish clause" thereof should become a part of the agreement, and that she would carry out the same as though it were a bequest of property belonging solely to Louis in which she should have only a life estate. On June 25, 1942, an "agreement" was executed by Sophie, Wilfred and Jack. After reciting ownership of the real estate by Louis and Sophie as tenants by the entirety and the above-mentioned agreement it was stated that in consideration of the execution of the will of Louis and other valuable consideration passing between the parties Sophie agreed that so long as she lived Wilfred would receive one-fourth of the net income from the rented property and that Jack should collect the rents and manage the same and receive $25 weekly therefor. This instrument and the earlier one dated October 9th, 1941, were signed and sealed by the parties thereto and acknowledged before a notary. Louis died July 30, 1942. His will, although filed with the registrar, has not been offered for probate. For sometime after Louis' death Sophie made payments to Wilfred totaling more than $2,900, allegedly from the rental income.

Finally, about four and one-half years after Louis' death Wilfred filed his complaint against Sophie and Jack for accounting of moneys received since the death of Louis and for judgment for moneys claimed to be due him out of income from the property. Yetta, Mary and Ida, other children of the first and second marriages, were added as plaintiffs. They prayed for judgment declaring all six children vested with a remainder in the real property subject to a life estate in Sophie. Robert was joined as a defendant. Answering, the defendants claimed sole ownership in Sophie, as survivor of the tenancies by the entireties, of all real estate covered by the will, and that the property was not subject to disposal by Louis; that there was no valid consideration for the agreement of October 9, 1941; that Sophie executed the same to please the whim of her ill husband; that the agreement of June 25, 1942, was without consideration and that payments made

to Wilfred were to avert arguments which caused her much physical harm. She included a counterclaim to recover back the moneys paid.

Proffers of testimony were made by plaintiffs, to prove certain other acts and declarations by Sophie indicating acknowledgment and acceptance of the terms of the will and agreement of October 9, 1941, and as tending to show her understanding and intentions respecting the same. These were rejected by the court. The trial court found that all the properties in question were owned at the time of Louis' death jointly by him and Sophie as tenants by the entirety; that upon Louis' death all were in the sole ownership of Sophie; that there was no evidence to establish in any plaintiff a right, title or interest in said properties; that Sophie had paid no moneys to Wilfred pursuant to any legal obligation, and that plaintiffs had not sustained the burden of proof in attempting to establish their claims. Accordingly, judgment was entered for defendants and the cause dismissed. The counterclaim was dismissed without prejudice.

Appellants contend that the "agreement" of October 9, 1941, is in legal effect a deed, vesting a life estate in Sophie, subject to a charge against the net income of 25% to Wilfred and $25 weekly to Jack, with remainders in fee to the six children upon the death of Sophie. References are also made to the writing as a gift or trust. But in either case a deed was necessary. No explanation is advanced for the instrument of June 25, 1942, except that it "clarifies" and "corroborates" the one of October 9th. The primary question then is whether this last mentioned instrument meets the requirements of a deed.

The following provisions of Title 45, District of Columbia Code 1940 bear directly upon the question:

Section 106.

"No estate of inheritance, or for life, or for a longer term than one year, in any real property, corporeal or incorporeal, in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, or by will."

Section 301.

"The following forms or forms to the like effect shall be sufficient, and any covenant, limitation, restriction, or proviso allowed by law may be added, annexed to, or introduced in the said forms. Any other form conforming to the rules herein laid down shall be sufficient."

 Measuring the instrument by the foregoing requirements, enlightened by the forms set forth, which cannot be disregarded, we think it is not sufficient to grant or create any estate or use in the property. A deed is a written expression of the act of granting or creating an estate or use in land. It bespeaks a present act, rather than a promise for future action. Agricultural Bank v. Rice, 45 U.S. 225, 4 How. 225, 11 L.Ed. 949; Williams v. Paine, 169 U.S. 55, 76, 18 S.Ct. 279, 42 L.Ed. 658; Chavez v. De Bergere, 231 U.S. 482, 34 S.Ct. 144, 58 L.Ed. 325. The distinction readily appears as between a deed to land and a contract to sell the same. One is a grant, the other only a promise to grant. The writing of October 9th at best is but a promise by Sophie to create certain estates in favor of the children. That falls far short of a grant or declaration actually conveying or creating an estate.

 Appellees raise the question of consideration. They contend that there was no actual consideration for Sophie's agreement. According to the instrument itself Louis' will was the moving consideration for Sophie's promise to "carry out the will and wish clause" of his will. We cannot see that the will did lend any legal support for Sophie's undertaking. Admittedly all Louis' property covered by the will was jointly owned with his wife. Hence if she survived him ownership in its entirety would remain in her. Nothing done by him alone could alter that result. Such is the peculiar nature of a tenancy by the entirety. Therefore, the devise to Sophie was a futile act, without substance to form any legal consideration for her promise. Obviously, however, one may convey his property to another without material inducement, if in so doing the rights

of others, such as a creditors, are not prejudiced. Hence Louis and Sophie might **have** conveyed their property to their children without any material consideration. But, as we have pointed out, such a gift could only be effected by their joint deed conforming to the requirements of law. The fact that they did not so convey the property, but kept full ownership and control raises a strong inference that they had no intention at that time of relinquishing their absolute rights by granting any interest or estate in the property to their children. It is also consistent with the action they attempted by expressing in writing their intention as to future disposition of the property in favor of their children. If the writing is tested as a contract, rather than a deed as contended, Sophie's undertaking therein is purely of an executory nature and would need the support of a valid consideration.

■ A deed conveying real property or any interest therein, or declaring or limiting any use or trust thereof cannot take effect without delivery to a person in whose favor it is executed. D.C.Code 1940, § 45—501. Here there was no delivery of the instrument of October 9, 1941. That conclusion is implicit in the findings of the trial judge. We think it is justified. Although manual delivery may not be necessary, there must be some "words or acts showing an intention that the deed shall be complete and operative" and "the intent of the parties is to be determined by what occurred at the time of the transaction." Walker v. Warner, 31 App.D.C. 76, 85, 89; Atlas Portland Cement Co. v. Fox, 49 App.D.C. 292, 266 F. 1021. It may be reasonably inferred from the evidence that the paper remained with the attorney who drafted it for Louis and Sophie from the time of its execution until the trial, when he produced it under a subpoena. In these circumstances he was their attorney. Hence legal possession rested in them until Louis' death. Thereafter it continued in Sophie alone. No action appears to have been taken at any time by either suggestive of a manual delivery of the paper to any person other than their own attorney. So clearly there was no actual delivery of the instrument to any of the children. Nor do we think the testimony including that proffered and rejected, bearing upon the intentions of Louis or Sophie was sufficient to prove a constructive delivery. This is especially true in view of the presumption of nondelivery arising by reason of the paper remaining in possession of the makers. Safford v. Burke, 130 Misc. 12, 223 N.Y.S. 626; Witham v. Witham, 156 Or. 59, 66 P.2d 281, 110 A.L.R. 253; Vreeland v. Vreeland, 48 N.J.Eq. 56, 21 A. 627.

■ Reverting to the agreement of June 25, 1942, between Sophie, Wilfred and Jack, it should be noted that this instrument expressly relates to the properties owned by Louis and Sophie as tenants by the entirety. It was made while Louis was still alive. Therefore, without his joining, it could have no force or effect as a grant of any estate or interest in the property. It should also be noted that Wilfred is making no claim under this or the earlier instrument as a contract of employment. He and the other plaintiffs stake their claims upon the single proposition that the "agreement" of October 9th operated to grant or create certain interests or estates in their favor.

The point made by appellants that error was committed in rejection of proffered testimony to show the intention and understanding of Louis and Sophie need not be considered further. Whatever their intentions they cannot cure the fatal deficiencies of either instrument to operate as a deed. The judgment is

Affirmed.

On Petition for Rehearing

PER CURIAM.

Appellants' brief stated that "When Louis Schooler executed his Will on October 9, 1941 * * * all of his property * * * was jointly owned by his wife and himself." This admission was parenthetical but did not appear to be inadvertent. Neither appellants' Statement of Points nor their argument contradicted it. The appeal was duly decided in accordance with the admission. As we said in our opinion rendered November 22, 1948, "Ad-

mittedly all Louis' property covered by the will was jointly owned with his wife."

Appellants have filed a petition for rehearing in which, for the first time, they contradict their admission and point out that there was some testimony to the effect that certain businesses in which Louis Schooler was engaged were his alone.

██ Our Rules 17(c) requires that "The brief of the appellant shall contain * * * (6) *Statement of Points*. A concise statement of the points on which appellant intends to rely * * *". Rule 17(i) provides that "Points not presented according to the rules of the court, will be disregarded, though the court, at its option, may notice and pass upon a plain error not pointed out or relied upon."

We need not consider what we might have done if a plain error not previously pointed out or relied upon had been brought to our attention when the appeal was argued. The error now asserted is not plain and was not brought to our attention until after we had considered and decided the case. Both fairness to appellees and our obligation to other litigants require that we should not permit this appeal, after it has been presented and lost on one basis, to be presented again on an opposite basis. The petition for rehearing is therefore denied.

STEPHENS, Chief Judge (dissenting). I think the petition for rehearing should be granted.